# UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF NORTH CAROLINA

CASE No. 19cv00270-GCM

EFREN DELGADO,

    Plaintiff,

vs.

THE ALLSTATE CORPORATION, ALLSTATE
INDEMNITY COMPANY, ALLSTATE
INSURANCE COMPANY,

    Defendants.

_____/

## MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS OR, ALTERNATIVELY, TO DISMISS OR STRIKE CLASS ALLEGATIONS

# INTRODUCTION

Defendants respectfully move for entry of an order dismissing Plaintiff's Complaint. Plaintiff, an insured under an automobile insurance policy issued by Defendant Allstate Indemnity Company, alleges Defendants pay discounted preferred provider organization ("PPO") or voluntary provider network ("VPN") rates for medical expenses pursuant to an agreement with Coventry, which allegedly resulted in underpayment of medical payments ("Med Pay") benefits to Plaintiff and his putative class. In fact, as demonstrated below, the Allstate/Coventry agreement, and the relevant insurance policy, both referenced in Plaintiff's Complaint, expressly allow for the application of the subject VPN/PPO rates, and prohibit medical providers, who agree to accept such rates in full for their charges, from balance-billing their patients such as Plaintiff here.

Not surprisingly, then, Plaintiff's claims fail as a matter of law based on his failure to allege sufficient facts demonstrating he is entitled to the Med Pay benefits he seeks -- *i.e.,* the amounts Defendants allegedly underpaid as a result of the VPN/PPO discounts -- or that he has sustained any injury sufficient to confer standing. Indeed, Plaintiff does not allege any facts, as opposed to insufficient legal conclusions, that he was balance-billed by his medical provider for any unpaid amounts or otherwise paid anything out of pocket for those bills. Nor does Plaintiff allege that his medical provider did not accept the PPO/VPN rate as full payment for Plaintiff's medical bills. Accordingly, what Plaintiff is really seeking here is a baseless windfall from Defendants -- payment for the discounted portion of medical bills that Plaintiff never owed or had any obligation to pay.

Plaintiff's claims are otherwise insufficiently pled, as set forth below, and are also subject to dismissal on those grounds. In addition, as Plaintiff's Complaint allegations indicate, only one

of the Defendants, Allstate Indemnity Company, actually issued Plaintiff an insurance policy. Courts have often held that related insurance entities that did not actually issue the relevant insurance policy -- here, all Defendants except for Allstate Indemnity Company -- are not proper defendants. Accordingly, all Plaintiff's claims against The Allstate Corporation and Allstate Insurance Company should be dismissed on that ground as well. In addition, Plaintiff fails to allege facts sufficient to establish the requirements for holding a parent company such as The Allstate Corporation, which does not even issue insurance policies, liable.

Alternatively, if any part of this case survives Defendants' Motion to Dismiss on the merits, the class action allegations in the Complaint should be dismissed or stricken because the face of the Complaint shows this case is unsuitable for class action treatment as a matter of law. On the face of the Complaint, where Plaintiff expressly alleges Defendants owe Med Pay benefits only for expenses that are reasonable and necessary, it is apparent that Plaintiff's claims present far too many predominating individualized issues for this case to ever proceed on a class action basis. These include highly individualized issues related to the reasonableness and necessity of the medical expenses Plaintiff alleges Defendants underpaid to him and each putative class member, and the ability of each putative class member to establish injury and standing. And Plaintiff's substantive claims raise even further predominating individualized issues that cannot, as a matter of law, be resolved on a class-wide basis. Accordingly, if the Court does not dismiss this case in its entirety, it should dismiss or strike the class action allegations in all events.

## ALLEGATIONS OF COMPLAINT

According to Plaintiff, he had an insurance policy issued by Allstate Indemnity Company. Compl., ¶ 16. Plaintiff alleges he and the putative class members contracted for Med Pay

coverage with Defendants which required Defendants to "pay reasonable medical expenses incurred for necessary medical and funeral services because of bodily injury." Compl., ¶ 14.

Plaintiff alleges he was injured in an automobile accident on January 31, 2016. Compl., ¶ 15. According to Plaintiff, Allstate Indemnity Company paid him an amount less than the charges he allegedly incurred as a result of medical treatment from the accident. *Id.*, ¶ 17. Plaintiff alleges he received an Explanation of Benefits ("EOB") indicating Reason Code 340 was applied to each of the charges submitted by the Plaintiff, which was described as: "The charges have been priced according to a Coventry owned contract." *Id.*, ¶ 19.

Plaintiff alleges Defendants maintain a contract with "Coventry . . . to assign reductions to medical provider charges. Coventry contracts with medical providers to allow Coventry a reduced reimbursement rate for its plan subscribers to satisfy a medical provider charge while guaranteeing the medical provider prompt payment on behalf of its subscribers/plan participants." *Id.*, ¶ 20. Plaintiff further alleges "Plaintiff and class members, as Allstate insureds, were not covered plan participants under an Allstate sponsored health insurance plan that would afford them discounts on medical provider charges. Therefore, the Plaintiffs and class members were not subject to any discounts guaranteed by health insurance contracts with medical providers, nor was Allstate entitled to any health insurance bargained discounts with medical providers. As a result, the Defendant's reimbursements to Plaintiffs and class members were insufficient to satisfy the Plaintiff's and class members' incurred medical bills." *Id.*, ¶ 21.

In fact, the agreement between Allstate and Coventry referenced in the Complaint (¶ 20), through which Allstate obtains the VPN/PPO rates about which Plaintiff complains, expressly allows Allstate to use Coventry's VPN/PPO rates. *See* relevant portions of Allstate/Coventry Agreement, Exhibit 2 to the Declaration of Lucia Hathaway, which is attached as Exhibit A

hereto.[1] Moreover, Coventry expressly warrants in that agreement that the medical providers with whom it has a relationship have agreed to accept the VPN/PPO rates as full payment for their services, understand that auto insurers such as Allstate Indemnity Company will be accessing those rates, and will not balance bill insureds for their services. *Id.,* ¶ 2.4.5, 2.5.2. In addition, Plaintiff's policy documents include an "Important Notice," which expressly refers (at pp. 2-3 of the Notice) to "Voluntary Provider Networks," and states "If you are injured and treated by a provider who is a member of one of the participating networks, we may review their bills for covered medical services for re-pricing based on the approved rate for that provider's network." *See* Important Notice portion of Policy documents, attached in group as Exhibit 1 to the Hathaway Declaration, at pp. 10-11 of Group Exhibit.

Plaintiff asserts four counts: Count I Breach of Contract; Count II Bad Faith; Count III Unfair Claims Settlement Practices; and Count IV Unfair Trade or Deceptive Practices. Plaintiff's putative class is defined as:

> All North Carolina residents who, at any time prior to the four years following the filing of this action have been charged for medical care; submitted such charges to the Defendant for payment and/or reimbursement pursuant to the medical payments coverage of their policy with Defendant; have received less than full payment for those charges; and whose medical payments pursuant to the policy have not exhausted the medical payments coverage limits of the policy.

*Id.,* ¶ 24.

## ARGUMENT

## I.   PLAINTIFF FAILS TO ALLEGE FACTS SUFFICIENT TO ESTABLISH

---

[1] Documents central to a complaint, but which are not physically attached to the pleading, may be considered in ruling on a motion to dismiss. *See, e.g., Suntrust Mortg., Inc. v. Busby,* 651 F. Supp. 2d 472, 480 (W.D.N.C. 2009); *Gibbs v. Potter,* No. 4:09-CV-37-DAN, 2010 WL 3811802, at *2 (E.D.N.C. Sept. 27, 2010).

**STANDING.**

A plaintiff's "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007). *See also Miller v. Zaxby's*, No. 1:18-CV-00194-MR-DSC, 2019 WL 475069, at *1 (W.D.N.C. Jan. 16, 2019), *report and recommendation adopted*, No. 1:18-CV-00194-MR-DSC, 2019 WL 469920 (W.D.N.C. Feb. 5, 2019) (same). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 570). This action should be dismissed in its entirety because Plaintiff fails to allege facts, as opposed to mere conclusory allegations, sufficient to establish standing.

Article III of the United States Constitution limits the jurisdiction of federal courts to actual cases and controversies. *Doe v. Obama*, 631 F.3d 157, 160 (4th Cir. 2011); *Friends of the Earth, Inc. v. Gaston Copper Recycling Corp.*, 629 F.3d 387, 396 (4th Cir. 2011). The doctrine of "standing is an essential and unchanging part of the case-or-controversy requirement of Article III." *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992). "This requirement ensures that a plaintiff has a personal stake in the outcome of a dispute, and that judicial resolution of the dispute is appropriate." *Friends of the Earth*, 629 F.3d at 396. To meet the constitutional requirement for standing, a plaintiff must prove that: 1) he or she suffered an "injury in fact" that is concrete and particularized, and is actual or imminent; 2) the injury is fairly traceable to the challenged action of the defendant; and 3) the injury likely will be redressed by a favorable decision. *Id.* "That a suit may be a class action . . . adds nothing to the question of standing, for even named plaintiffs who represent a class 'must allege and show that they personally have been injured, not that injury has been suffered by other, unidentified members of the class to which

they belong." *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1547, n. 6 (2016) (citation and internal quotation omitted).

Here, to sufficiently allege injury for purported unpaid or underpaid medical expenses, which Plaintiff has not done, a plaintiff must allege facts demonstrating that the provider did not accept the above-described VPN/PPO payment as payment in full and that the plaintiff paid out-of-pocket or was balance-billed as a result.

For example, in *Atkins v. Great Am. Ins. Co.*, 15 N.C. App. 79, 83, 189 S.E.2d 501, 504 (1972), the insured sought medical payments coverage for dental work which had not yet been performed and for which she had not paid anything. The court explained that "expenses are incurred within the medical payment coverage . . . *when one has paid, or become legally obligated to pay* such expenses within one year from the date of the accident." (Emphasis added.) The court held that because the subject dental expenses were not incurred, the plaintiff was not entitled to recover Med Pay benefits:

> Although the plaintiff and the dentist had 'agreed that such work would be performed in the future,' the plaintiff did not specifically agree that the dentist in question would perform the work or that she would pay him his proposed fee of $946.00. We are of the opinion and so hold that upon the agreed statement of facts neither the plaintiff nor her estate, in the event of her death, was legally obligated to pay the dentist, and therefore, that Judge Preston correctly held that the plaintiff was not entitled to recover.

*Id.* at 83-84, 189 S.E.2d 501, 504-05.[2]

In *State Farm Mut. Auto. Ins. Co. v. Bowers*, 255 Va. 581, 583, 500 S.E.2d 212, 212 (1998), as here, the applicable policy defined medical expense as "all reasonable and necessary

---

[2] *See also Lane v. Aetna Cas. & Sur. Co.*, 48 N.C. App. 634, 639, 269 S.E.2d 711, 715 (1980) (same principle; "In the instant case there are no allegations or evidence that plaintiff ever had

expenses for medical . . . services . . . incurred . . . ." *Id.* Citing *Atkins*, the court held plaintiff

was not entitled to Med Pay benefits, stating:

> The evidence in the instant case was that Bowers would never be
> liable for any amount greater than that which the various health-
> care providers accepted as full payment for their services based on
> the Blue Cross fee schedule. Stated differently, the health-care
> providers' agreements with Blue Cross prevented them from
> collecting more than the scheduled fee and any required co-
> payment. Therefore, we conclude that the medical expenses
> Bowers "incurred" were the amounts that the health-care providers
> accepted as full payment for their services rendered to him.
> Bowers has not paid nor is he "legally obligated to pay" the
> amounts written off by the providers. . . . To decide otherwise
> would be to grant Bowers a windfall because he would be
> receiving an amount greater than that which he would ever be
> legally obligated to pay.

*Id* at 585-86, 500 S.E.2d at 214. *See also LaBerenz v. American Fam. Ins. Co.*, 181 P.3d 328,

337 (Colo. Ct. App. 2007) (ruling insureds in a medical bill review case suffered no damages,

and so could not be part of a class, where they never paid out-of-pocket for the balance of the

reduced bills); *Bryant v. American Seafoods Co.*, 348 Fed. Appx. 256, 257 (9th Cir. 2009)

("Because the [employees] did not receive balance bills from their medical providers until after

they filed their third amended complaint, the [employees] had suffered no injury-in-fact at the

time the third amended complaint was filed and therefore lacked standing to bring their

complaint.").

Applying the above principles here, Plaintiff's Complaint, on its face, fails based on lack

of standing. The Complaint conclusorily alleges "Plaintiff and class members, Defendant's

insureds, are required to pay money out of their own pocket to satisfy charges from providers

who have not been paid their charged 'usual fees' by the Defendant." Compl., ¶ 3. But the

---

paid or become legally obligated to pay for any of the medical expenses which accrued as a result

Complaint alleges no facts whatsoever regarding any actual out-of-pocket payment by Plaintiff or any putative class member. The Complaint is also devoid of any allegations regarding any provider pursuing Plaintiff or any putative class member for any balance supposedly due, let alone any specific amount Plaintiff or the putative class were required to pay after the PPO discounts were applied. Nor is there any allegation that Plaintiff's medical providers would not have accepted the PPO-discounted payment as payment in full.

The absence of such non-conclusory factual allegations is not surprising. As set forth above, the Coventry agreement referenced in the Complaint, through which Allstate obtains the VPN/PPO rates about which Plaintiff complains, expressly allows Allstate to use Coventry's rates. *See* Coventry Agreement, ¶ 2.1. Further, Coventry expressly warrants that the medical providers with whom it has a relationship have agreed to accept the VPN/PPO rates as full payment for their services, and will not balance bill insureds for their services. *Id.,* ¶ 2.4.5, 2.5.2 And, as set forth in the Hathaway Declaration, at ¶ 6, as Coventry has verified in Exhibit 3 to the Declaration Plaintiff's medical provider here was a member of the VPN network with respect to all the treatment rendered to Plaintiff, so was bound to accept the VPN/PPO rates for that treatment.

Indeed, even if the Complaint included facts regarding any out-of-pocket payment, which it does not, Plaintiff's allegations still fail. As noted above, Plaintiff was expressly advised in his policy documents that Defendants had the right to pay the VPN/PPO rates where, as here, the provider was a VPN member. To the extent, Plaintiff took it upon himself to pay the subject bills, and there are no facts alleged indicating he did so, that would not establish standing. *See, e.g., Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 416 (2013) ("respondents cannot manufacture

of his accident.").

standing merely by inflicting harm on themselves based on their fears of hypothetical future harm that is not certainly impending."); *Wikimedia Found. v. Nat'l Sec. Agency*, 857 F.3d 193, 216 (4th Cir. 2017) (same principle).

Not only is there no injury in these circumstances, the application of the VPN/PPO discounts is actually beneficial to insureds such as Plaintiff. Because Defendants are not paying the full amount of the medical expenses, this benefits insureds by ensuring that policy limits are not prematurely depleted by unreasonable or unnecessary charges. Specifically, Plaintiff and each putative class member will still have available the amount reduced based on Allstate's VPN/PPO agreement with Coventry, subject to the applicable policy limit, to pay for future medical bills they may receive based on the injuries in question.

## II. PLAINTIFF'S POLICY DOCUMENTS EXPRESSLY CONTEMPLATE VPN/PPO REDUCTIONS.

Apart from lack of standing, dismissal is warranted because the applicable insurance policy documents expressly allow for PPO reductions about which Plaintiff complains. Specifically, as noted, the applicable insurance policy includes an "Important Notice" which expressly refers (at pp. 2-3 of the Notice) to "Voluntary Provider Networks," and states "If you are injured and treated by a provider who is a member of one of the participating networks, we may review their bills for covered medical services for re-pricing based on the approved rate for that provider's network."

Because the insurance contract allows for the application of VPN/PPO reductions, all Plaintiff's claims fail as a matter of law. The VPN/PPO reductions were expressly allowed and contemplated by Plaintiff's policy documents, so Defendants could not have breached the insurance contract by applying those reductions, which defeats Plaintiff's breach of contract

claim. *See, e.g., Abbington SPE, LLC v. U.S. Bank, Nat'l Ass'n,* 352 F. Supp. 3d 508, 517

(E.D.N.C. 2016), *aff'd,* 698 Fed. App'x 750 (4th Cir. 2017) (a breach-of-contract claim involves

two elements: (1) the existence of a valid contract and (2) breach of the terms of that contract).

Plaintiff's bad faith claim fails because Defendant could not have refused to pay after

recognizing a valid claim, acted in bad faith or outrageously in light of the Policy documents

expressly allowing the conduct about which Plaintiff complains. *See, e.g., Cleveland Const., Inc.

v. Fireman's Fund Ins. Co.,* 819 F. Supp. 2d 477, 483 (W.D.N.C. 2011) (this Court explained

that to prevail on a claim for bad faith, a plaintiff must establish: "(1) a refusal to pay after

recognition of a valid claim, (2) bad faith, and (3) aggravating or outrageous conduct (for

punitive damages")).

      Plaintiff's statutory claims fail for similar reasons.  Again, because the complained of

conduct was permitted by Plaintiff's Policy documents, none of the unfair methods of

competition and unfair and deceptive acts or practices identified in Section 58-63-15 -- *e.g.,*

misrepresentation of the policy terms or refusal to pay claims without a reasonable investigation -

- occurred here.  Nor could there have been any unfair methods of competition in or affecting

commerce, or unfair or deceptive acts or practices in or affecting commerce, for purposes of

stating a claim under Section 75-1.1.  Put simply, in light of the above-referenced Policy

documents specifically advising Plaintiff that Allstate may apply PPO rates, there was nothing

unfair or deceptive about engaging in that clearly disclosed conduct.

## III.    PLAINTIFF'S CLAIMS FAIL AS A MATTER OF LAW ON OTHER GROUNDS.

      Plaintiff's claims are subject to dismissal for other reasons.  Initially, Plaintiff fails to

state a claim for bad faith.  In *Cleveland,* 819 F. Supp. 2d at 483, this Court explained that to

prevail on a claim for bad faith, a plaintiff must establish: "(1) a refusal to pay after recognition

of a valid claim, (2) bad faith, and (3) aggravating or outrageous conduct (for punitive damages). Bad faith means not based on honest disagreement or innocent mistake." (Citation and internal quotations omitted.) Applying this test in *Huang v. State Farm Fire & Cas. Co.*, No. 5:14-CV-00069-RN, 2015 WL 1433553, at *3-4 (E.D.N.C. Mar. 27, 2015), the court dismissed the bad faith claim, stating:

> None of the facts alleged in the Complaint render it plausible to infer that State Farm recognized the Huangs' claim as valid but refused to pay them. State Farm did clearly recognize that the Huangs had a valid claim regarding some damage to their home, but the insurer apparently did not believe that the total amount that the Huangs sought to recover was justified based on the State Farm adjuster's estimate.

The court also found the plaintiffs failed to allege sufficient facts to support the second and third elements of their "bad faith" claim: bad faith and aggravating conduct. The court explained:

> The element of "bad faith" requires a factual allegation supporting the idea that State Farm's rejection of portions of the Huangs' claim was dishonest. . . . The aggravating conduct element requires a factual allegation that shows the Huangs were treated in a manner contrary to their rights. . . . The Complaint attempts to support these elements by asserting that State Farm (1) "failed to consider adequate information" provided by the Huangs that would suggest a different evaluation of the damage to their house, (2) failed to respond to the claim in a reasonable amount of time, (3) failed to offer an adequate explanation for its decision, and (4) had no reasonable basis upon which to deny full payment of the Huangs' total claim.

*Id.* at *4. The court held the plaintiffs complaint provided "no factual support for [these allegations]. For this reason, these allegations do not rise above the level of inadequate conclusory statements." *Id.* [3]

---

[3] *See also American Select Ins. Co. v. Natural Blend Vegetable Dehydration, LLC*, No. 4:17-CV-178-BR, 2019 WL 1317712, at *4 (E.D.N.C. Mar. 22, 2019) ("American Select and Hanover did

Here, as in the above cases, Plaintiff merely asserts Defendants failed to pay the full amount of the medical charges, not that Defendants recognized any Med Pay claim as valid but refused to pay it. In addition, while the Complaint asserts a litany of alleged misconduct -- *e.g.*, misrepresenting facts, failing to promptly settle claims and failing to promptly provide a reasonable explanation for denial of the claim (Compl., ¶ 50), these allegations are no different from the conclusory allegations found legally insufficient in *Huang*.

Moreover, there is no North Carolina law precluding the application of PPO discounts. But there is case law from another jurisdiction holding there is nothing wrong with an insurer applying such discounts. *See, e.g., Coy Chiropractic Health Ctr., Inc. v. Travelers Cas. & Sur. Co.*, 409 Ill. App. 3d 1114, 1122, 957 N.E.2d 1174, 1181-82 (5th Dist. 2011), *as modified on denial of reh'g* (May 9, 2011) ("the plaintiffs allege that Travelers misrepresented to them that Travelers was entitled to a PPO discount. To the extent that the plaintiffs are arguing that Travelers was not entitled to a PPO discount because it failed to steer the patients to the plaintiffs as required by any purported contracts, the plaintiffs are simply realleging a breach of contract, which is not actionable under the Consumer Fraud Act. . . . To the extent that the plaintiffs are alleging that Travelers misrepresented the fact that it belonged to the First Health workers' compensation network, it is clear from the record that Travelers did belong to that network. Again, the preferred provider agreements plainly show that the plaintiffs contracted to receive

---

not act in bad faith as there remains a genuine disagreement about who is liable for the damage at issue and Natural Blend has failed to plead facts establishing aggravating or outrageous conduct on behalf of the insurers. Therefore, American Select's and Hanover's motions to dismiss Natural Blend's bad faith claim and breach of covenant of good faith and fair dealing claim will be granted."); *Williams v. Ohio Nat'l Life Assurance Co.*, 364 F. Supp. 3d 605, 613 (W.D.N.C. 2019) (same principle).

discounted reimbursements for workers' compensation claims from payors that contract with

First Health.").

Defendants therefore certainly had at the very least a good faith basis for applying the

PPO discounts at issue. And the Complaint has no factual allegations regarding any bad faith or

aggravated conduct by Defendants. Plaintiff's bad faith claim is therefore legally deficient.

Plaintiff's Section 58-63-15 and 75-1.1 claims are also legally infirm. In *Natural Blend,*

the court dismissed similar claims, stating:

> In support of its N.C. Gen. Stat. § 58-63-15 and § 75-1.1 claims,
> alleged at paragraph 202 of its pleading, Natural Blend
> incorporates "paragraphs 1 through 170" and relies on "[t]he acts
> of [American Select] and Hanover as alleged herein." (DE # 16, at
> 31.) Thus, only part of the prior pleadings are incorporated and
> none of the pleadings are cited with any specificity. As noted by
> Hanover, this pleading practice leaves the court and parties alike
> "guessing which specific factual allegations form the basis of
> Natural Blend's [unfair and deceptive trade practices] claim." (DE
> # 33, at 16.) Rule 8 requires the pleader to "give the defendant fair
> notice of what the ... claim is and the grounds upon which it rests."
> Bell Atl. Corp. v. Twombly, 550 U.S. 544, 127 S.Ct. 1955, 167
> L.Ed.2d 929 (2007). Natural Blend has failed to do so in this case.

2019 WL 1317712, at *5. The court further stated:

> Additionally, the only damages alleged in Natural Blend's unfair
> and deceptive trade practices claim are those "stated herein." (DE
> # 16, at 31.) Throughout its pleading, the only damages asserted
> against American Select and Hanover are "at least" $3,238,254.70.
> (See, e.g., DE # 16, at 30.) This is the same amount claimed on
> Natural Blend's proof of loss form. (Id. at 23.) For these reasons,
> Natural Blend's claim under N.C. Gen. Stat. § 58-63-15(11) cannot
> stand.

*Id.* Plaintiff's Section 58-63-15 allegations here are just as conclusory as those in *Natural Blend.*

Plaintiff's Section 75-1.1 claim fares no better. "[C]onduct carried out pursuant to

contractual relations rarely violates the UTPA. In fact, even an intentional breach of contract is

normally insufficient to contravene the UTPA; a breach of contract must be particularly

egregious to permit recovery under North Carolina's UTPA." *South Atlantic Partnership of Tenn. v. Riese*, 284 F.3d 518, 536 (4th Cir. 2002). Where, as here, the Complaint fails to allege any egregious or aggravating circumstances, the Section 75-1.1 claim should be dismissed. That was the result in *Natural Blend*. 2019 WL 1317712, at *6 ("Natural Blend has failed to properly allege any egregious or aggravating circumstances. . . . Natural Blend asserts that American Select 'willfully contravened the procedures under the policy' and Hanover misrepresented known facts. . . . However, it references no facts in support of these broad conclusions."). Plaintiff's allegations here are no different. They amount to broad conclusions with no supporting facts.

## IV. PLAINTIFF'S CLAIMS AGAINST THE NON-WRITING DEFENDANTS FAIL.

"[I]t is essential that named class representatives demonstrate standing through a 'requisite case or controversy between themselves personally and [defendants],' not merely allege that 'injury has been suffered by other, unidentified members of the class to which they belong and which they purport to represent." *Dash v. FirstPlus Home Loan Owner Tr. 1996-2*, 248 F. Supp. 2d 489, 504 (M.D.N.C. 2003) (citations and internal quotations omitted). In a multi-defendant action or class action, the named plaintiffs must establish that they have been harmed by each of the defendants. *Id.* "Plaintiffs who lack standing to sue cannot acquire that status through class representation. When no controversy exists between the Plaintiffs and any Defendants with whom the Plaintiffs have not dealt, standing to sue those Defendants is lacking, even though the Plaintiffs may purport to bring the action on behalf of a class which might include persons who had dealt with those Defendants." *In re Jackson*, No. 87-10019, 1990 WL 10625270, at *2 (Bankr. S.D. Ga. June 5, 1990).

Applying these principles, courts have often held that related insurance entities that did not actually issue the relevant insurance policy -- here, all Defendants except for Allstate Indemnity Company -- are not proper defendants in this type of case.[4]

Plaintiff has tried to plead around this problem by including "common business" practice allegations. Compl., ¶¶ 8-10 (referring to Defendants having uniform business practices, policies and procedures). But Plaintiff's allegations are no different from those rejected by the courts in this context. For example, in *Shin*, 2009 WL 688586, at *5, the court held: "Ms. Shin's amended complaint asserts that she has standing against all four named Defendants because they are inter-related and alter-egos of each other. Specifically, she cites agreements between the Defendants to set common claim handling practices, and pooled labor resources. These allegations are insufficient to establish standing." 2009 WL 688586, at *5. The "Court refuse[d] to embrace the notion that all related companies may be haled into court for the actions of one (or in this case two) of those inter-related, but distinct, companies merely because they have agreed on common practices." *Id.*[5] Plaintiff's allegations here are no different from those rejected in the above

---

[4] *See, e.g., Johnson v. GEICO Cas. Co.*, 673 F. Supp. 2d 244, 254 (D. Del. 2009) ("[E]ven if GEICO Casualty and GEICO General engaged in the arbitrary and unreasonable denial of benefits, Plaintiffs' injuries are not traceable to that conduct. Rather, Plaintiffs' alleged injuries are traceable to Government Employees Insurance Company and GEICO Indemnity, the insurance companies which issued their policies."); *NBL Flooring, Inc. v. Trumbull Ins. Co.*, No. CIV. A. 10-4398, 2014 WL 317880, at *3 (E.D. Pa. Jan. 28, 2014) (same principle); *Shin v. Esurance Ins. Co.*, No. C8-5626 RBL, 2009 WL 688586, at *4 (W.D. Wash. Mar. 13, 2009) (same principle); *Perez v. State Farm Mut. Auto. Ins. Co.*, No. C 06-01962 JW, 2011 WL 5833636, at *2 (N.D. Cal. Nov. 15, 2011) ("Plaintiffs do not allege that they bought any insurance policies from any of the Moving Parties, it follows that Plaintiffs did not suffer any injury due to the conduct of the Moving Parties, which means that Plaintiffs lack Article III standing to bring a case against the Moving Parties.").

[5] *See also Hovenkotter v. Safeco Corp.*, No. C09-218JLR, 2009 WL 6698029, at *2-5 (W.D. Wash. Aug. 3, 2009) (same principle); *Fosmire v. Progressive Max. Ins. Co.*, No. C10–5291JLR, 2010 WL 3489595, at *3 (W.D. Wash. Aug. 31, 2010) (same principle).

cases. Accordingly, all Plaintiff's claims against Allstate Insurance Company and The Allstate Corporation should be dismissed on this ground.

At the very least, Plaintiff's claims against The Allstate Corporation should be dismissed. Each of Plaintiff's causes of action against The Allstate Corporation is premised on its alleged liability as a parent corporation of the other Defendants. Compl., ¶¶ 6, 7. However, a parent company such as The Allstate Corporation cannot be held liable unless: (1) it exercises "complete domination" over the "policy and business practice in respect to the transaction attacked so that the corporate entity as to this transaction had at the time no separate mind, will or existence of its own," (2) the parent used this control to commit a wrong in contravention of plaintiff's legal rights, and (3) the wrong proximately caused plaintiff's injury or loss. *Murphy v. Allstate Corp.*, No. 1:09CV00915, 2011 WL 4499104, at \*5 (M.D.N.C. Sept. 27, 2011), *report and recommendation adopted*, No. 1:09 CV 915, 2011 WL 5864308 (M.D.N.C. Nov. 22, 2011).

Specifically, North Carolina courts will disregard the corporate veil under what is known as the "mere instrumentality" rule. *Glenn v. Wagner*, 313 N.C. 450, 454, 329 S.E.2d 326, 330 (1985). Under this rule, "[a] corporation which exercises actual control over another, operating the latter as a mere instrumentality or tool, is liable for the torts of the corporation thus controlled. In such instances, the separate identities of parent and subsidiary or affiliated corporations may be disregarded." *Id.* (citation and internal quotations omitted). There are three elements that permit piercing the corporate veil under the mere instrumentality rule: (1) control in the form of complete domination so that the corporate entity has no separate existence of its own; (2) such control must have been used by the defendant to commit the alleged wrong; and (3) the control and breach of duty must proximately cause the alleged injury. *Id.* at 454-55, 329 S.E.2d at 330.

Applying the above principles in *Murphy,* the court dismissed the plaintiff's claims against The Allstate Corporation based on complaint allegations substantively similar to those here:

> Plaintiff's First Amended Complaint alleges that "[a]ll actions and misconduct undertaken by defendants [Allstate Insurance] or [Allstate Financial], as [Allstate Corporation's] subsidiaries, were ratified and endorsed by defendant [Allstate Corporation] as the parent company, in that the conduct described herein by officers, directors, employees, agents and servants was in accordance with [Allstate Corporation's] method of business and course of dealings, notwithstanding the applicable law." . . . Plaintiff's First Amended Complaint contains no further allegations regarding Allstate Corporation's role in the incident in question. (*See id.* at 22–40.)

2011 WL 4499104, at *5. The court found these allegations legally insufficient, stating:

> Plaintiff's First Amended Complaint is deficient on two fronts: (1) Plaintiff offered no factual assertions to support the contention that Allstate Corporation "ratified" the actions of Allstate Financial or Allstate Insurance (*see* Docket Entry 8–2 at 23); and (2) even if the Court accepted Plaintiff's conclusory allegations as true, mere ratification would fall short of the "complete domination" required by *Glenn,* 313 N.C. at 455, 329 S.E.2d at 330. The First Amended Complaint thus lacks "sufficient *factual matter,* accepted as true, to 'state a claim to relief that is plausible on its face,'" *Iqbal,* 129 S.Ct. at 1949 (internal citations omitted) (emphasis added) (quoting *Twombly,* 550 U.S. at 570). Accordingly, Plaintiff's claims against Allstate Corporation should be dismissed.

*Id.* (emphasis in original).[6]

Like *Murphy,* other courts have dismissed claims against The Allstate Corporation based on similar veil piercing principles. *See, e.g., Cordis v. Allstate Ins. Co.,* No. CV 04-191-M-LBE, 2006 WL 8435851, at *2–3 (D. Mont. Jan. 27, 2006) (where plaintiff merely alleged The Allstate

---

[6] *See also Richmond v. Indalex Inc.,* 308 F. Supp. 2d 648, 657 (M.D.N.C. 2004) ("while Plaintiff may have alleged that Novar exercised control over Indalex, such allegations are insufficient to show that Novar exercised 'complete domination and control' over Indalex as that language is defined in *Glenn v. Wagner.* Further, Plaintiff's Complaint contains no allegations that Indalex was a sham corporation.").

Corporation controlled Allstate Insurance Company, that they held themselves out to the public as one and the same, and shared officers and directors and the same address, that was not enough to warrant disregarding corporate separateness).

Here too, the Complaint offers no allegations, and certainly no factual support, demonstrating The Allstate Corporation exercised total control or complete domination and control over the other Defendants. Nor does Plaintiff allege that the other Defendants were "sham" corporations. Indeed, Plaintiff's own Complaint allegations show this cannot be true, since he alleges that, far from being a "sham" company, Allstate Indemnity Company is the entity that actually issued his insurance policy. The Complaint is also devoid of any facts showing that any control exercised by The Allstate Corporation was the proximate cause of the alleged loss.

Indeed, Plaintiff has no possible cause of action or standing against The Allstate Corporation. Not only does The Allstate Corporation not control or dominate any other Allstate entity, it does not sell insurance policies, adjust claims or even have employees, and it is maintained as a separate business entity from its subsidiaries, including Allstate Insurance Company and Allstate Indemnity Company. (*See* Declaration of Daniel Gordon, attached as Exhibit B hereto, ¶¶ 4-7.)[7]

## V. ALTERNATIVELY, THE CLASS ALLEGATIONS SHOULD BE DISMISSED OR STRICKEN.

---

[7] In assessing a question of standing, a district court may consider evidence outside the pleadings without converting the proceeding to one for summary judgment. *See, e.g., Trinity Outdoor, L.L.C. v. City of Rockville*, 123 Fed. App'x 101, 105 (4th Cir. 2005). *See also Cordis*, 2006 WL 8435851, at *3 (in dismissing The Allstate Corporation from the case, noting "Allstate has provided affidavit testimony to affirmatively support its position that the alter ego and agency tests cannot be established in this case," including demonstrating that "Allstate does not conduct insurance business, nor does it commingle funds or business records with AIC. (Id. at ¶¶ 6-7).").

If the Court declines to dismiss any part of Plaintiff's Complaint in its entirety, it should, alternatively, dismiss or strike the Complaint's class action allegations. Courts can and should dismiss legally deficient class action allegations at the pleadings stage.[8] To survive this type of motion to dismiss, a plaintiff must plead facts sufficient to demonstrate that all the prerequisites of Fed. R. Civ. P. 23(a) and (b) are met. Courts routinely dismiss class action allegations where, as here, a complaint fails to plead the minimum facts necessary to satisfy these class action prerequisites.[9] As shown below, the face of the Complaint makes clear that, as a matter of law, the requirements for a viable class could never be met here.

### A. Individualized Issues Related To The Reasonableness And Necessity Of Medical Bills And Treatment Will Predominate.

The central question in this case, whether applying VPN/PPO discounts breached any duty to pay reasonable expenses for necessary medical treatment, cannot possibly be resolved on a class-wide basis because it requires examining each insured's individual claim. Even if Defendants' application of the VPN/PPO discounts was wrong, which Defendants obviously dispute, that does not save Plaintiff's class allegations. Plaintiff himself acknowledges he is not

---

[8] *See, e.g., Hassan v. Lenovo (United States), Inc.*, No. 5:18-CV-105-BO, 2019 WL 123002, at *5 (E.D.N.C. Jan. 7, 2019) ("Federal courts may dismiss class allegations if 'the issues are plain enough from the pleadings to determine whether the interests of the absent parties are fairly encompassed within the named plaintiff's claim.'") (quoting *General Telephone Co. of Southwest v. Falcon*, 457 U.S. 147, 160 (1982)); *Stanley v. Cent. Garden & Pet Corp.*, 891 F. Supp. 2d 757, 769 (D. Md. 2012) (same principle). Indeed, Fed. R. Civ. P. 23(d)(1)(D) expressly provides for elimination of the class allegations on the pleadings in appropriate circumstances.

[9] *See, e.g., Ross–Randolph v. Allstate Ins. Co.*, Civil No. DKC–99–3344, 2001 WL 36042162, at *4 (D. Md. May 21, 2001); *Saunders v. BellSouth Advert. & Pub. Corp.*, No. 98-1885-CIV, 1998 WL 1051961, at *1 (S.D. Fla. Nov. 10, 1998); *Hill v. Wells Fargo Bank, N.A.*, 946 F. Supp. 2d 817, 829 (N.D. Ill. 2013); *Bearden v. Honeywell Int'l, Inc.*, No. 3:09-01035, 2010 WL 1223936, *9 & n. 13 (M.D. Tenn. Mar. 24, 2010); *Alaska Airlines, Inc. v. Carey*, 2008 WL 2725796, *6 (W.D. Wash. July 11, 2008), *aff'd*, 395 Fed. App'x 476 (9th Cir. 2010); *Lumpkin v. E.I. Du Pont de Nemours & Co.*, 161 F.R.D. 480, 481-82 (M.D. Ga. 1995); *Advanced Acupuncture Clinic, et*

entitled to Med Pay coverage unless the medical expenses are reasonable and necessary. Compl., ¶ 14. Under North Carolina law, the insured has the burden to prove coverage exists for the claimed loss. *See e.g., Colony Tire Corp. v. Fed. Ins. Co.*, 217 F. Supp. 3d 860, 865 (E.D.N.C. 2016). This creates inherently predominating individualized issues of the reasonableness and necessity of the charge for each and every class member, which makes this case wholly unsuitable for class treatment. And that is why courts throughout the country have typically found class action treatment inappropriate and often dismissed class action allegations in cases involving allegedly wrongful reductions of medical bills by insurance companies.

In *Ross-Randolph*, 2001 WL 36042162, at *6 (D. Md. May 11, 2001), for example, where the plaintiff alleged the defendant PIP (a substantively equivalent coverage to Med Pay) insurer wrongfully underpaid medical expenses using a computer program, the court dismissed the class allegations because any inquiry into denial of PIP benefits necessarily required a fact finder to make individualized determinations on a number of issues as to each purported class member, including whether each disputed medical expense was reasonable and necessary. Similarly, in *Premier Open MRI v. Allstate Ins. Co.*, No. 16-2003-CA-004498, 2005 WL 6058681, *1 (Cir. Ct. Duval Cty. Fla. Jan. 7, 2005), the plaintiff challenged the defendant insurers' alleged refusal to pay certain medical bills the plaintiff submitted to the defendants. The bills at issue involved magnetic resonance imaging services supposedly performed by the plaintiff, an MRI provider, on behalf of certain of the defendants' policyholders. These policyholders were allegedly insured by the defendants for PIP benefits, and purportedly assigned their claims for payment for the MRI services to the plaintiff. The court held the plaintiff's lawsuit was inherently unsuitable for class

---

*al. v. Allstate Insurance Company, et al.*, No. 07-4925, 2008 WL 4056244, *15 (D.N.J. Aug. 26, 2008), *aff'd on other grounds*, 2009 WL 2171221 (3d Cir. July 22, 2009).

action treatment, stating, in language equally applicable here, "the Court finds that the need for these individual determinations of reasonableness and necessity render this Action inappropriate for class action treatment as a matter of law." *Id.*, *1. The court further stated: "As a matter of law, the trier of fact would need to review the particular facts and circumstances associated with the rendering and billing of each MRI service by the class members. Given the need for these individualized evidentiary inquiries, it is clear that these inquiries will predominate over any issues common to the class as a whole." *Id.*[10]

Indeed, In *Roche v. Zenith Ins. Co.*, No. 07-CV-0875-MJR-PMF, 2009 WL 1657901, at *1 (S.D. Ill. June 11, 2009), the plaintiff medical provider alleged the insurer wrongfully took PPO discounts because it did so without establishing any programs directing its covered claimants to plaintiff and other preferred providers. The court found class action treatment inappropriate given all the individualized issues that predominated. For example, "Even if Zenith was not entitled to the discount, the Court would have to inquire as to whether each particular provider was in fact deceived by the false statement [regarding its ability to take the PPO discount] and then mistakenly accepted a reduced payment in reliance on it." *Id.* at *8.

Applying the above principles here, Plaintiff's class allegations are fatally deficient. The same types of issues, which, again, are apparent from the face of the Complaint, also preclude class action treatment here as a matter of law. There would have to be a separate determination as to each putative class member's claim regarding whether each and every disputed bill was reasonable and for necessary treatment related to the subject accident -- otherwise, no Med Pay

---

[10] *See also, all for same principle, Halvorson v. Auto-Owners Ins. Co.*, 718 F.3d 773, 779 (8th Cir. 2013); *Advanced Acupuncture*, 2008 WL 4056244, *13; *Gloria v. Allstate County Mutual Insurance Company*, C/A SA-99-CA-676-PM, 2000 WL 35754563, *9 (W.D. Tex. Sept. 29,

coverage would be owed. As in all the above cases, these issues cannot possibly be resolved on a class-wide basis.

### B. Plaintiff's Specific Claims Raise Additional Predominating Individualized Issues.

Individualized issues related to injury and standing also predominate. Here, the Court would need to examine individually what impact, if any, the VPN/PPO discounts had upon each putative class member to determine whether that individual can prove damages or injury.

As demonstrated above, Plaintiff failed to allege facts sufficient to show he suffered any injury as a result of the VPN/PPO discounts he challenges. Even if the Court declines to dismiss the Complaint on this ground, however, the allegations and issues related to each putative class member's purported injury or lack thereof raise even further individualized issues that will predominate in this case. Whether a class member incurred actual damages by paying any balance due after discounts were applied, or was pursued by a medical provider for the balance, or was otherwise damaged as the result of the conduct Plaintiff challenges in this lawsuit will of necessity vary from class member to class member.

Apart from injury and standing, Plaintiff's substantive counts raise even more individualized issues that will predominate. For example, as noted, in *Cleveland*, 819 F. Supp. 2d at 483, this Court explained that to prevail on a claim for bad faith, a plaintiff must establish: "(1) a refusal to pay after recognition of a valid claim, (2) bad faith, and (3) aggravating or outrageous conduct (for punitive damages). Bad faith means not based on honest disagreement or innocent mistake." *Id.* (citation and internal quotations omitted). Even if the Court allows Plaintiff's bad faith claim to survive dismissal, the individualized issues that will have to be

---

2000); *Johnson v. GEICO Cas. Co.*, 310 F.R.D. 246, 255 (D. Del. 2015), *aff'd*, No. 16-1132,

resolved as to this claim are inherently unsuitable for class action treatment. For each putative class member, there will have to be a determination whether (1) Defendants recognized the putative class member had a valid claim then refused to pay it; (2) Defendants acted in bad faith or based on an honest disagreement about the amount owed for a particular claim; and (3) Defendants' conduct was aggravated or outrageous.

Plaintiff's "bad faith" allegations raise even more individualized issues. The Complaint asserts a litany of alleged misconduct -- *e.g.*, misrepresenting facts, failing to promptly settle claims, and failing to promptly provide a reasonable explanation for denial of the claim (Compl., ¶ 50). For each and every putative class member, then, the Court would have to determine whether the evidence in fact shows Defendants misrepresented anything, did not promptly settle a claim, failed to provide a reasonable explanation for a claim decision, etc. These are yet further predominating individualized questions that cannot be resolved on a global basis. *See, e.g., Roche,* 2009 WL 1657901, at *1.

Plaintiff's Section 58-63-15 and 75-1.1 claims also cannot be valid class claims for this reason. Plaintiff alleges Defendants violated Section 58-63-15 in that they supposedly engaged in yet another litany of wrongful acts. Compl., ¶ 54. Plaintiff alleges Defendants violated Section 75-1.1 based on a similar litany. Compl., ¶ 59. Plaintiff alleges no facts demonstrating Defendants did any of these things. Yet, if the case proceeds there will have to be a determination, for each and every putative class member, as to whether Defendants engaged in any of the myriad misdeeds Plaintiff cites. That would require a separate mini-trial for each putative class member: *e.g.*, What was communicated to that individual? Did Defendants give false information or misrepresentations of pertinent facts or insurance policy provisions? What

---

2016 WL 6958431 (3d Cir. Nov. 29, 2016).

explanation was given for a claim denial and when was it given? What type of investigation was performed? Was the investigation prompt? What was the amount Defendant agreed to pay for each claim? Was it less than what a reasonable person would have believed they should have been paid? These are all highly individualized issues that cannot be resolved without a separate inquiry for each and every putative class member. *See, e.g., Roche,* 2009 WL 1657901, at *1.

Plaintiff's Section 75-1.1 claim raises even more individualized issues. "[C]onduct carried out pursuant to contractual relations rarely violates the UTPA. In fact, even an intentional breach of contract is normally insufficient to contravene the UTPA; a breach of contract must be particularly egregious to permit recovery under North Carolina's UTPA." *Riese,* 284 F.3d at 536. So, for each putative class member, there would have to be a determination whether Defendants' conduct was sufficiently egregious to permit that individual to recover under Section 75-1.1. And, in addition to all of the above, individualized issues related to the statute of limitations will also predominate here.[11]

In short, even if the Court declines to dismiss Plaintiff's lawsuit in its entirety, it should dismiss or strike the class action allegations. From the face of Plaintiff's Complaint, there are, as

---

[11] For example, breach of contract claims have a 3-year limitations period. *See, e.g., Lawley v. Liberty Mut. Grp., Inc.,* No. 5:11-CV-00106-RLV, 2012 WL 4513622, at *2 (W.D.N.C. Sept. 28, 2012). All of Plaintiff's other causes of action also have limitations bars. Accordingly, there would have to be an individualized determination, for each putative class member, as to whether the statute of limitations had run with respect to each count. Such individualized statute of limitations issues also preclude class action treatment here. *See, e.g., Thorn v. Jefferson-Pilot Life Ins. Co.,* 445 F.3d 311, 327 (4th Cir. 2006) (the "district court did not clearly err in finding that Jefferson–Pilot's statute of limitations defense presented issues that cannot be determined on a class-wide basis."); *Seeligson v. Devon Energy Prod. Co., L.P.,* 753 Fed. App'x 225, 235 (5th Cir. 2018) ("The district court did not consider the statute of limitations and tolling questions in its predominance analysis, so it abused its discretion when it determined that common questions would predominate over individual issues and certified the class."); *Guillory v. Am. Tobacco Co.,* No. 97cv8641, 2001 WL 290603, at *9 (N.D. Ill. Mar. 20, 2001) (same principle).

a matter of law, far too many predominating individualized issues here for this case to ever proceed as a valid class action.

## CONCLUSION

For all the foregoing reasons, Defendants respectfully request this Court to enter an order dismissing this action, with prejudice and without leave to amend. Alternatively, Defendants respectfully request the Court to dismiss or strike the Complaint's class allegations.

Respectfully submitted,

By: /s/ Todd A. Jones
Todd A. Jones
ANDERSON JONES, PLLC
421 N. Blount Street
Raleigh, NC 27601
Tel: 919-277-2541
Fax: 919-277-2544
*Tjones@andersonandjones.com*

Of Counsel:
Steven M. Levy (*pro hac vice*)
Mark L. Hanover (*pro hac vice*)
DENTONS US LLP
233 S Wacker Drive,
Suite 5900
Chicago, IL 60606
Tel: 312-876-8000
Fax: 312-876-7934
*steven.levy@dentons.com*
*mark.hanover@dentons.com*

## CERTIFICATE OF SERVICE

I hereby certify that the foregoing Defendants' Memorandum in Support of Motion to

Dismiss and Exhibits was filed on August 16, 2019 using the Court's CM/ECF which will send

notification to the parties below:

SCHWABA LAW FIRM, PLLC
Andrew J. Schwaba
NC Bar No.: 36455
212 South Tryon Street
Suite 1725
Charlotte, NC 28281
(704) 370-0220
(704) 370-0210 (fax)
aschwaba@schwabalaw.com

NICHOLSON LAW FIRM, P.A.
Edward H. Nicholson, Jr.
NC Bar No. 36123
212 South Tryon Street
Suite 1725
Charlotte, NC 28281
(704) 223-2406 (telephone)
nicholsonshumaker@att.net

Attorneys for Plaintiff


Dated:  August 16, 2019


                                        **By:** /s/ Todd A. Jones
                                             Todd A. Jones, NCSB #25593
                                             *Attorney for Defendants*
                                             Anderson Jones, PLLC
                                             P.O. Box 20248
                                             Raleigh, NC  27619
                                             Phone: (919) 277-2541
                                             Fax: (919) 277-2544