UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA

CASE No. 19cv00270-GCM

EFREN DELGADO,

  Plaintiff,

vs.

THE ALLSTATE CORPORATION, ALLSTATE INDEMNITY COMPANY, ALLSTATE INSURANCE COMPANY,

  Defendants.

**DEFENDANTS' SUPPLEMENTAL BRIEF IN SUPPORT OF THEIR MOTION TO DISMISS OR, ALTERNATIVELY, TO DISMISS OR STRIKE CLASS ALLEGATIONS**

Pursuant to this Court's February 19, 2020 Order (ECF 14), Defendants respectfully submit this Supplemental Brief, along with the accompanying Declaration of Lynn Preston, further demonstrating Plaintiff's failure to establish injury, resulting in his lack of standing to bring this lawsuit. This Court's concern about the factual issues related to Plaintiff's inability to establish injury is well-founded. As demonstrated in Defendants' opening and reply briefs on dismissal (ECF 11 and 13), to sufficiently establish injury for purported unpaid or underpaid medical expenses a plaintiff must point to facts demonstrating that the medical provider did not accept the VPN/PPO payments about which Plaintiff complains as payment in full, and that the plaintiff paid, out of pocket, more than the VPN amount as a result.

In addition to the cases discussed in Defendants' initial briefing,[1] a more recent case further supports Defendants' position. Citing *Atkins* and *Bowers,* Chief Judge Schroeder found the plaintiff failed to demonstrate injury in a similar case, *Grimes v. Gov't Employees Ins. Co.*, No. 1:18-CV-798, 2019 WL 3425227, *1 (M.D.N.C. July 30, 2019). There, the defendant insurer, GEICO, issued an insurance policy with medical payments provisions which, like those in Plaintiff's policy here, provided coverage for "reasonable expenses incurred for necessary medical and funeral services because of bodily injury." *Id.* The plaintiff received medical treatment for injuries sustained in a car accident with a gross total charge of $4,436.97, which she submitted to GEICO for payment, and for which *GEICO* paid a discounted amount. *Id., *2. The plaintiff alleged GEICO had no right to pay the reduced amount. The court disagreed, stating, in language equally applicable here:

> Viewed in the light most favorable to Grimes, the complaint fails to plausibly allege that she has 'paid or become legally obligated to pay' the initial charge listed for the medical services prior to the

---

[1] *E.g., Atkins v. Great Am. Ins. Co.*, 15 N.C. App. 79, 83, 189 S.E.2d 501, 504 (1972); *State Farm Mut. Auto. Ins. Co. v. Bowers*, 255 Va. 581, 583, 500 S.E.2d 212, 212 (1998).

> health insurer's reductions. Accordingly, Grimes has failed to
> state a claim that GEICO has breached the contract. It is
> noteworthy that there is no compelling practical reason for the
> contrary result she urges, which smacks of a sharp argument. *The
> point of insurance is to be made whole. Requiring GEICO to pay
> an insured amounts the insured never paid and would never be
> responsible for would result in an inequitable windfall to the
> insured and needlessly increase premiums.*

*Id.,* *10 (emphasis added).[2] As *Grimes* further shows, there is simply no injury where the insurer pays a discounted amount for a medical provider's charges that the provider agrees to accept, and where the insured would not be required to pay anything out of pocket for the balance.

As this Court recognized, in their dismissal papers Defendants argued that, facially, Plaintiff lacks standing because his Complaint failed to allege facts demonstrating that he paid his provider any more than the discounted VPN payment. Defendants also submitted evidence in this regard, in the form of the applicable policy documents and the Coventry VPN agreement referenced in the Complaint, through the Declaration of Lucia Hathaway (ECF 10-1). Despite having been challenged on this point in Defendants' opening dismissal brief, Plaintiff did not, in his response brief, adduce any actual facts indicating he paid more to the provider than the VPN/PPO amount Allstate had paid to Plaintiff.

Plaintiff's failure to identify any such facts is not surprising given that, as shown in Defendants' opening brief, the Coventry agreement, through which Defendants obtain the VPN/PPO rates about which Plaintiff complains, expressly allows Defendants to use Coventry's lower VPN rates, and warrants that the medical providers with whom it has a relationship, such as Plaintiff's provider here, have agreed to accept the VPN/PPO rates as full payment for their

---

[2] *See also id.,* *11-12 (also finding the plaintiff's unfair and deceptive trade practices act claim untenable based on lack of injury: "*GEICO is correct that Grimes fails to allege an injury*. The only actual damage she alleges is the $2,461.70 in written-off charges she was never required to pay. . . . Because GEICO was not contractually required to pay that amount, Grimes has no

2

services, and will not balance bill insureds for those services. (ECF 11, pp. 6-9.) Moreover, as set forth in the Declaration of Lynn Preston ("Preston Dec."), attached hereto as Exhibit A, Plaintiff and his counsel were expressly advised by Plaintiff's insurer, Allstate Indemnity Company ("Allstate"), of the VPN arrangement, not only in Plaintiff's policy documents but also in communications to both Plaintiff and his counsel. And Plaintiff and his counsel were expressly informed that VPN rates were applied to the relevant medical bill and further told to contact Allstate if any balance billing attempt occurred, which they never did.

Specifically, on February 6, 2016, Allstate sent an initial letter to Plaintiff regarding Medical Payments coverage. *Id.,* ¶ 4 & Exhibit 1 thereto. That letter expressly explained the VPN arrangement, and also included a "helpful hints" document which refers specifically to balance billing and advises the insured to contact Allstate if that were to occur: "**What do I do if I receive a balance due bill from my provider?** Send us the bill or call us at 866-575-4363 Ext. 9817611." *Id.* On May 5, 2016, the adjuster advised Plaintiff that Allstate had not received any medical bills from him, and Plaintiff stated he was now represented by an attorney and would have the bills sent in. *Id.,* ¶ 5. On the same day, the adjuster contacted Plaintiff's attorney, who is also Plaintiff's attorney in this lawsuit, advised that Plaintiff and another injured, Mr. Alvarado, who has not sued Defendants, had bills in excess of the $2,000 policy limit, and asked that the bills be sent to Allstate for payment. *Id.,* ¶ 6-7 & Exhibit 2 thereto. On May 11, 2016, the adjuster sent a letter to Plaintiff's attorney regarding Medical Payments coverage. *Id.,* ¶ 8 & Exhibit 3 thereto. That letter again explained the VPN arrangement, and again included the "helpful hints" document which specifically refers to balance billing and advises the insured or attorney to contact Allstate if that were to occur. *Id.* On June 30, 2016,

---

plausible injury and her unfair and deceptive trade practices claim will be dismissed.") (emphasis

the adjuster followed up with Plaintiff's attorney's office, again requesting medical bills, restated his understanding that both Plaintiff and Mr. Alvarado had bills well in excess of the $2,000 policy limit, and asked Plaintiff's counsel to please send them to Allstate (and also stated that the policy limits would likely be exhausted). *Id.,* ¶ 9. That same day, the adjuster sent a letter to Plaintiff's attorney advising that he had not yet received any medical bills, and asking that the attorney send any such bills to Allstate. *Id.,* ¶ 10 & Exhibit 4 thereto.

On July 12, 2016, Plaintiff's counsel sent Allstate a bill for Plaintiff from Active Spine & Rehab Center totaling $2,300, which is the lone bill at issue in this case. *Id.,* ¶ 11 & Exhibit 5 thereto. As reflected on the Explanation of Benefits Allstate then sent to Plaintiff, on August 3, 2016 Allstate paid for that bill in the amount of $1,102.76. The EOB indicated the bill had been repriced with VPN rates since the provider participated in the VPN. Payment for this amount was issued to Plaintiff and his attorney and mailed to the attorney per his request. *Id.,* ¶ 12 & Exhibit 6 thereto.

On May 30, 2017, Allstate received a letter from Plaintiff's attorney, dated May 23, 2017, in which the attorney requested a certified copy of Plaintiff's policy, which Allstate sent, and thanked Allstate for sending the Medical Payments coverage check for Plaintiff. *Id.,* ¶ 13 & Exhibit 7 thereto. Notably, at no time did Plaintiff or his attorney inform Allstate that Plaintiff's provider, Advance Spine & Rehab, had balance billed Plaintiff for any amounts above the VPN rate Allstate had paid to Plaintiff for that provider's bill, or request Allstate to issue any further payments on that bill to Plaintiff or the provider. *Id.,* ¶ 14.

So, not only has Plaintiff failed to establish standing based on the lack of any factual allegations in his Complaint that he indeed paid in excess of the VPN amount to his provider, but

---

added).

4

the above factual evidence -- *i.e.,* Plaintiff and his counsel both being informed repeatedly, via the relevant policy documents, communications from Allstate, and the EOB, about Allstate's payment of VPN rates, and being specifically told to contact Allstate if any balance billing attempt was made but never doing so -- further demonstrates that Plaintiff suffered no injury based on Allstate's payment to him of the VPN/PPO amount.

There are only three possible factual scenarios here: 1. Plaintiff actually paid less than the VPN rate to the provider; 2. Plaintiff paid exactly the VPN rate to the provider, or 3. Plaintiff and his counsel ignored Allstate's express VPN communications and irrationally paid more than the VPN rate to the provider. In the first two circumstances, Plaintiff obviously suffered no injury because Allstate's payment to him was either sufficient or more than sufficient to pay his provider. But even if, despite the lack of such a factual allegation in his Complaint, Plaintiff actually did pay more than the VPN amount to the provider, he still would lack standing to bring this action. That is because the law is well settled that a plaintiff cannot create standing by unnecessarily inflicting harm on himself, which is exactly the situation here if Plaintiff in fact paid anything beyond the VPN amount Allstate paid to him for the relevant medical bill.

For example, in *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 415 (2013), the respondents argued they could establish standing based on the measures they had undertaken to avoid statutorily permitted surveillance they claimed was unlawful. The United States Supreme Court rejected that argument, stating that allowing the respondents "to establish standing by asserting that they suffer present costs and burdens that are based on a fear of surveillance, so long as that fear is not 'fanciful, paranoid, or otherwise unreasonable,' . . . improperly waters down the fundamental requirements of Article III." *Id.* at 416. The Court explained "Respondents' contention that they have standing because they incurred certain costs as a reasonable reaction to

5

a risk of harm is unavailing -- because the harm respondents seek to avoid is not certainly impending.  In other words, *respondents cannot manufacture standing merely by inflicting harm on themselves based on their fears of hypothetical future harm that is not certainly impending.*" *Id.* (emphasis added).  *See also Wikimedia Found. v. Nat'l Sec. Agency*, 857 F.3d 193, 216 (4th Cir. 2017) (same principle).

*In Food & Water Watch, Inc. v. Vilsack,* 808 F.3d 905 (D.C. Cir. 2015), consumers and a consumer advocacy organization sued the Secretary of the Department of Agriculture, challenging implementation of the United States Department of Agriculture's National Poultry Inspection System ("NPIS") regulations that permitted employees of poultry-processing establishments to take a more active role in the inspection process.  The plaintiffs argued their avoidance of NPIS poultry, or alternatively the increased cost of seeking out poultry from other sources, constituted an injury in fact sufficient to establish standing because they "have taken these steps to avoid potential injury from NPIS-produced poultry." *Id.* at 918.  The court disagreed, stating that under *Clapper* plaintiffs could not manufacture standing by inflicting unnecessary harm on themselves:

> Plaintiffs have not plausibly alleged that they face a substantial increase in the risk of harm from NPIS-produced poultry.  Just as the respondents in *Clapper* could not repackage their "first failed theory of standing" as a theory of costs, *id.,* Plaintiffs here cannot establish standing by incurring costs that "are simply the product of their fear of" NPIS poultry, *id.* at 1152.

*Id.* at 919.  *See also Brosnan v. Becerra*, No. 218CV00322MCEACPS, 2018 WL 1518838, *2-4 (E.D. Cal. Mar. 28, 2018) (same principle; "plaintiff cannot rely on the closing of his business as an injury-in-fact which is fairly traceable to the IWPA [California's Immigrant Worker Protection Act].  The complaint acknowledges that plaintiff shut down his business 'out of an abundance of caution to avoid violating federal law.' . . .  This choice by plaintiff was not

6

compelled by the IWPA and so cannot be considered traceable to it. Because the alleged closing of the business was not responsive to any 'certainly impending' future harm, it cannot itself constitute an injury sufficient to support standing."); *Rechnitz v. Transamerica Life Ins. Co.*, No. LACV1703970VAPAFMX, 2018 WL 6164267, *4 (C.D. Cal. July 18, 2018) (same principle; plaintiffs' incurring attorneys' fees to resolve an improper beneficiary designation was insufficient to establish standing: "Plaintiffs' incurrence of attorneys' fees does not constitute a concrete injury because . . . Plaintiffs did not face a 'certainly impending' injury that necessitated such mitigation expenses. . . . Plaintiffs cannot manufacture standing merely by inflicting harm on themselves based on their fears of hypothetical harm that is not certainly impending.") (citations and internal quotations omitted).

Applying the above principles here, to the extent Plaintiff, in his supplemental brief, points to any facts, as opposed to insufficient conclusions, demonstrating he did actually pay his provider more than the discounted VPN/PPO amount Allstate paid to Plaintiff, that would not establish standing. Plaintiff was expressly advised in his policy documents that Allstate had the right to pay the VPN/PPO rates where, as here, the provider was a VPN/PPO member. Then, after he submitted his claim, Plaintiff and his attorney were expressly told about this VPN arrangement, and were also expressly advised to inform Allstate if the provider tried to balance bill Plaintiff for more than the VPN rate, which neither Plaintiff nor his attorney ever did. Further, given the fact that VPN members such as Plaintiff's provider agreed to the VPN/PPO rates and are prohibited under the Coventry Agreement from balance billing insureds, there would have been absolutely no reason for Plaintiff to inflict harm on himself by paying anything beyond the VPN amount out of some fear of ultimately having to pay an overdue balance. Indeed, if the provider in this case did try to balance bill Plaintiff all Plaintiff had to do was

7

follow Allstate's explicit instructions to him and his attorney and contact Allstate, and the matter would have been swiftly resolved. In short, any payments in excess of the VPN rate Plaintiff might have made here (which to date have not been factually alleged in his Complaint), were self-inflicted harm which, under the above clear authorities, could not confer standing on him.

Finally, Plaintiff still cannot prevail on his claims for the additional reasons set forth in Defendants' opening brief (ECF 11, pp. 10-19) and reply brief (ECF 13, pp. 5-15), including that Plaintiff's insurance policy documents expressly allow the VPN/PPO reductions about which he complains. Nor can Plaintiff avoid the predominating individualized issues which preclude class action treatment here as a matter of law (ECF 11, pp. 20-26; ECF 13, pp. 15-24). Defendants will not repeat these additional arguments herein, but would emphasize that, no matter how the Court rules on the question of Plaintiff's lack of injury/standing, dismissal is still warranted based on Defendants' additional arguments and, in all events, Plaintiff's class action allegations should be dismissed or stricken. Indeed, as this Court recognized in its February 19 Order, whether Plaintiff sustained any injury in a case like this one may, if not clear from the face of the Complaint, be a *factual* issue, and the same type of highly individualized factual analysis discussed above, regarding just the named Plaintiff's injury or lack thereof, would also have to be resolved for each and every putative class member to establish whether standing exists, which is the very antithesis of a viable class action scenario.

## CONCLUSION

For all the foregoing reasons, and those set forth in Defendants' opening and reply dismissal briefs, Plaintiff's Complaint should either be dismissed in its entirety or, alternatively, Plaintiff's class action allegations should be dismissed or stricken.

Respectfully submitted this the 11th day of March, 2020

By: /s/ Todd A. Jones
Todd A. Jones
ANDERSON JONES, PLLC
421 N. Blount Street
Raleigh, NC 27601
Tel: 919-277-2541
Fax: 919-277-2544
*Tjones@andersonandjones.com*

Of counsel:
Steven M. Levy (*pro hac vice*)
Mark L. Hanover (*pro hac vice*)
DENTONS US LLP
233 S Wacker Drive,
Suite 5900
Chicago, IL 60606
Tel: 312-876-8000
Fax: 312-876-7934
*steven.levy@dentons.com*
*mark.hanover@dentons.com*