# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF NORTH CAROLINA
# CHARLOTTE DIVISION
# CIVIL ACTION NO. 3:19-CV-270-GCM

| | |
|---|---|
| EFREN DELGADO, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | |
| ) | **ORDER** |
| THE ALLSTATE CORPORATION, ) | |
| ALLSTATE INDEMNITY COMPANY, ) | |
| ALLSTATE INSURANCE COMPANY, ) | |
| ) | |
| Defendants. ) | |
| ) | |

**THIS MATTER** is before the Court on Defendants' Motion to Dismiss ("Motion") (Doc. No. 9). In that Motion, Defendants challenged Plaintiff's standing (Doc. No. 10, at 2), and, therefore, this Court's subject-matter jurisdiction, *see Beck v. McDonald*, 848 F.3d 262, 269 (4th Cir. 2017) (citing U.S. Const. art. III, § 2)). However, it was unclear whether Defendants' challenge was a factual or a facial one. On the one hand, Defendant asked the Court to apply the Rule 12(b)(6) standard. (Doc. No. 10, at 5, 6). On the other, Defendants cited to and relied on additional evidence beyond the allegations in Plaintiff's Complaint. (Doc. No. 10, at 9). For example, Defendants provided evidence indicating that Plaintiff was not injured. (Doc. No. 10, at 6, 7). To resolve the factual questions raised by Defendants, the Court raised a factual challenge to Plaintiff's standing *sua sponte* and ordered the parties to provide supplemental briefing. (Doc. No. 14, at 2). Defendants filed their supplemental memorandum (Doc. No. 15) on March 11, 2020, and Plaintiff filed his (Doc. No. 15) on March 24, 2020. This issue is now fully briefed and ripe for resolution.

## I. FACTS

Plaintiff alleges that Defendants inadequately reimbursed him for a medical claim. (Doc. No. 1, at 9). Plaintiff contracted with Defendants for an insurance policy that covered reasonable medical expenses resulting from an auto accident and for which Plaintiff was "legally responsible," with a limit of $2,000. (Doc. No. 1, at 4, 9: Doc. No. 10-1, at 19). The policy included a notice explaining that if Plaintiff was injured and "treated by a provider who is a member of [a] participating network[]," Defendants may re-price the corresponding bill in accordance with the "approved rate for that . . . network." (Doc. No. 10-1, at 15).

On January 31, 2016, Plaintiff was involved in a motor vehicle collision in Mooresville, North Carolina, sustaining injuries for which he received medical treatment. (Doc. No. 1, at 4). A week later, Defendants sent Plaintiff a letter, informing him that if he used a medical service provider within a participating network ("in-network"), Defendants may re-price medical bills received from that provider in accordance with the "approved rate" for that network. (Doc. No. 15-2, at 3). Defendants also included a form with "helpful hints," explaining that, if Plaintiff received a medical bill indicating a specific balance due, he should send it to Defendants. (Doc. No. 15-2, at 7).

On May 9, 2016, Plaintiff's attorneys (who also represent him in this case), sent Defendants a letter stating that they represent Plaintiff with respect to the accident that occurred on January 31, 2016. (Doc. No. 15-3, at 1). On May 11, 2016, Defendants sent Plaintiff's attorneys a letter conveying much of the same information contained in their January 2016 letter to Plaintiff. (Doc. No. 15-4). Defendants also attached the same "helpful hints" form that they sent to Plaintiff. (Doc. No. 15-4, at 5).

On June 30, 2016, Defendants sent a letter to Plaintiff's attorneys indicating that Plaintiff had not sent any bills for medical payments to Defendants. (Doc. No. 15-5, at 1). Plaintiff's attorneys then sent medical bills totaling $2,300 to Defendants. (Doc. No. 15-6, at 4). On August 3, 2016, Defendants sent Plaintiff's attorneys a check for $1,102.76, along with a statement indicating each reduction made to the $2,300 bill and an explanation that the charges were reduced "in accordance to a Coventry owned contract." (Doc. No. 15-7, at 1-2; 16-2, at 9). In other words, Plaintiff used an in-network provider, and, consequently, his medical bills were re-priced consistent with the rates for that network. Plaintiff, apparently not satisfied by Defendants' explanation for the reduction, then paid his medical service provider an additional $622.24 in an attempt to satisfy the $2,300 bill. (Doc. No. 16-1, at 1; Doc. No. 16-2, at 2).

## II.    STANDARD OF REVIEW

"A defendant may challenge subject-matter jurisdiction in one of two ways: facially or factually." *Beck v. McDonald*, 848 F.3d 262, 270 (4th Cir. 2017) (citation omitted). "In a facial challenge, the defendant contends that a complaint simply fails to allege facts upon which subject matter jurisdiction can be based. *Id.* (citation omitted). "Accordingly, the plaintiff is afforded the same procedural protection as she would receive under a Rule 12(b)(6) consideration, wherein the facts alleged in the complaint are taken as true." *Id.* (citation and internal quotations omitted). "In a factual challenge, the defendant argues that the jurisdictional allegations of the complaint are not true, providing the trial court the discretion to go beyond the allegations of the complaint and . . . determine if there are facts to support the jurisdictional allegations. *Id.* (citation and internal quotations omitted). In the context of a factual challenge, "the presumption of truthfulness normally accorded a complaint's allegations does not apply, [and] the district court is entitled to decide disputed issues of fact with respect to subject matter jurisdiction." *Kerns v. United States*,

585 F.3d 187, 192 (4th Cir. 2009). Further, the burden of proof rests on the plaintiff—the party asserting jurisdiction. *See Adams v. Bain*, 697 F.2d 1213, 1219 (4th Cir. 1982).

### III. ARGUMENT

Defendants argue that Plaintiff lacks standing. "To meet the constitutional requirement for standing, a plaintiff must prove that: 1) he or she suffered an 'injury in fact' that is concrete and particularized, and is actual or imminent; 2) the injury is fairly traceable to the challenged action of the defendant; and 3) the injury likely will be redressed by a favorable decision." *Friends of the Earth, Inc. v. Gaston Copper Recycling Corp.*, 629 F.3d 387, 395 (4th Cir. 2011). Plaintiff has met his burden of showing that he was injured in fact, producing an affidavit stating that he paid $600—out of pocket and in addition to the amount provided by Defendants—to satisfy the bill from his medical service providers. (Doc. No. 16-1, at 1). However, Plaintiff has not met his burden of showing that his injury is traceable to Defendants.

Defendants took numerous steps to notify Plaintiff that their payment of $1,102.76 was reduced due to an agreement with Plaintiff's medical service provider and that it satisfied the full $2,300 amount due. For example, Defendants provided Plaintiff with a notice—included with the insurance policy—that in-network medical bills may be re-priced "based on the approved rate for that . . . network." (Doc. No. 10-1, at 2; Doc. No. 10-1, at 15). Defendants then notified Plaintiff again, after Plaintiff's motor vehicle collision, that if he used an in-network medical provider Defendants may review the associated bills and re-price them "based on the approved rate for that provider's network." (Doc. No. 15-2, at 3). Defendants sent a similar notice to Plaintiff's counsel. (Doc. No. 15-4, at 1) ("Should your client's medical provider participate within this network, their bills may be priced accordingly."). Defendants also sent Plaintiff and Plaintiff's counsel a form titled "helpful hints for your medical claim" that included instructions to send any bills with a

2

"balance due" to Defendants—the form did not recommend that Plaintiff pay the difference between the balance due and the amount covered by Defendants. (Doc. 15-2, at 7; Doc. No. 15-4, at 5). Further, Defendants provided—with their $1,102.76 payment to Plaintiff—an invoice explaining each reduction and stating that the "charges [were] priced in accordance to a Coventry owned contract." (Doc. No. 15-7, at 2). In other words, the bill was re-priced because Plaintiff's medical provider was in-network, consistent with the notifications Defendant sent to Plaintiff.

The only evidence Plaintiff provides in rebuttal is an affidavit from Plaintiff's counsel stating that Defendants never informed him that Plaintiff's medical provider "was precluded from charging Plaintiff an amount in excess of the payment[]" made by Defendants. (Doc. No. 16-2, at 2). Plaintiff makes no attempt to argue that any of the documents discussed above—which show that Defendants did notify Plaintiff and his counsel that medical bills may be re-priced in accordance with agreed upon rates—are inaccurate, fraudulent, or altered in any way. In fact, Plaintiff's only response to those documents is an assertion that they were merely "hints" that such a reduction could—and did—occur, not clear notices. (Doc. No. 16, at 7). The Court disagrees. The documentary evidence discussed above clearly shows that Defendants notified Plaintiff that medical bills may be re-priced in accordance with pricing agreements and that Plaintiff's bill was re-priced in accordance with such an agreement. Thus, the injury resulting from Plaintiff's decision to pay additional funds directly to the medical service provider is not fairly traceable to Defendants, and, consequently, Plaintiff lacks standing.[1] *See Friends of the Earth*, 629 F.3d at 396.

---

[1] This Court is cognizant that, "where . . . jurisdictional facts are intertwined with facts central to the merits of the dispute . . .[,] the entire factual dispute is appropriately resolved only by a proceeding on the merits." *Adams v. Bain*, 697 F.2d 1213, 1219 (4th Cir. 1982). However, it is also true that such a proceeding is unnecessary where jurisdictional allegations are—like here—frivolous. *Kerns v. United States*, 585 F.3d 187, 193 (4th Cir. 2009). As the Court explains above, Defendants provide ample documentary evidence, unchallenged by Plaintiff. For that reason, and upon review, the evidence provided in support of the briefs is sufficient to decide the jurisdictional

## IV. CONCLUSION

For the reasons stated above, Defendant's Motion (Doc. No. 9) is **GRANTED**, and this case is **DISMISSED** for lack of standing.

**SO ORDERED**.

Signed: March 31, 2020

Graham C. Mullen
United States District Judge

---

question here. *See Schneider v. Donaldson Funeral Home, P.A.*, 733 F. App'x 641, 644 (4th Cir. 2018).